**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cr-00578-AGF |
| | ) | |
| CONNIE BOBO, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

The United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Derek J. Wiseman and Jonathan A. Clow, Assistant United States Attorneys for said District, files this Sentencing Memorandum and respectfully recommends that this Court impose a term of incarceration of 20 years. As explained below, this sentence is warranted under the relevant sentencing factors.

**PROCEDURAL BACKGROUND**

For her crimes spanning more than five years and costing taxpayers nearly $20 million, Defendant Connie Bobo was convicted of six criminal counts at trial: three counts of Wire Fraud, one count of Aggravated Identity Theft, and two counts of Obstruction of Justice. *See* PSR, ¶ 1. The Presentence Investigation Report ("PSR") correctly calculates the Sentencing Guideline Range for Defendant Bobo's Wire Fraud and Obstruction of Justice crimes as follows: "[b]ased upon a total offense level of 35 and a criminal history category of I, the guideline imprisonment range is 168 months to 210 months." *See* PSR, ¶ 75. The PSR also correctly notes that Defendant Bobo's Aggravated Identity Theft conviction carries a mandatory term of incarceration of 24 months that must run consecutive to the sentence imposed for her other counts of conviction. *Id.* at ¶¶ 73–74. The United States is respectfully requesting that this Court impose a sentence of 216

months' incarceration for Defendant Bobo's Wire Fraud and Obstruction of Justice crimes, and a consecutive sentence of 24 months' incarceration for her Aggravated Identity Theft crime, for a total sentence of 240 months. This sentencing recommendation represents a 6-month upward variance from the high-end of the Sentencing Guidelines, which is warranted for the reasons included below.

<u>**ANALYSIS**</u>

**I.     This Court Should Impose a Total Sentence of 20 Years Based on the Relevant Sentencing Factors.**

Defendant Connie Bobo perpetrated the single largest public assistance fraud in the history of the state of Missouri. After years of stealing millions of dollars in public funds that she promised to spend on feeding hungry children, Defendant Bobo fought tirelessly to obstruct justice, including by providing perjured testimony during her trial. Based on the seriousness of her crimes, the lack of any mitigating circumstances warranting a downward variance, the need to promote respect for the rule of law, afford adequate deterrence, and protect the public, the United States requests a sentence of 20 years' incarceration.

**A.     The Nature and Circumstances of Defendant Bobo's Crimes Make Clear That a 20-Year Sentence is Warranted.**

Defendant Connie Bobo defrauded the State of Missouri out of $19.7 million in public funds that she promised to spend on feeding hungry children. Based on the nature and circumstances of Defendant Bobo's crimes, this Court should apply an upward variance and impose a sentence above the Sentencing Guidelines range. Several factors support this request and demonstrate how Defendant Bobo's crimes are not properly accounted for by the Guidelines. Indeed, Defendant Bobo's crimes are particularly serious because **(1)** her scheme started at the very beginning of her participation in the state program and continued for more than five years;

**(2)** she took advantage of a once-in-a-generation pandemic; **(3)** she willfully enriched herself with public funds that hungry children in our community desperately needed; and **(4)** Defendant Bobo persistently obstructed justice, including by providing perjured testimony at trial. Because Defendant Bobo's crimes were more egregious than the Guidelines were designed to capture, this Court should impose an upward variance to reflect the seriousness of her offenses.

### (1) Defendant Bobo Executed a Years-Long Scheme That Started at the Very Beginning of Her Participation in the State Meal Program for Children.

Defendant Bobo set out to defraud the State of Missouri from the very outset of her participation in the state's meal program for children. Starting in 2018—before receiving a single dollar from the State of Missouri—Defendant Bobo submitted fraudulent state program enrollment documents that were rife with materially false statements. Defendant Bobo's lies included creating fake board members, fake trainings (*e.g.*, Govt. Ex. 7F), and fake bylaws (*e.g.*, Govt. Ex. 7U), all of which were designed to induce the State of Missouri to provide her with public funds to which she was not entitled.



**ARTICLE VI**
**DUTIES OF OFFICERS**

Section 1.

**President.** The President shall preside at all meetings of the members of the Organization, may call special meetings, shall represent the members in policy making and other general responsibilities for the affairs of the Organization, shall sign all contracts and perform such other duties as are customary to the office or as may be directed by the members. The President shall be the second signature on all checks issued by the Organization.

Government Exhibit 7U

| DATE | LOCATION | TOPIC | OBJECTIVE(S) | TRAINER |
|------|----------|-------|--------------|---------|
| Aug 2018 | Gene Slay | Returning Center Training | Orientation | |
| Aug 2018 | Gene Slay | Record Keeping Essentials | To understand the correct and compliant way to document records. | |
| Sept 2018 | Youth & Family | Returning Center Training | Orientation | Connie Bobo |
| Sept 2018 | Youth & Family | Record Keeping Essentials | To understand the documentation and contract compliance. | Connie Bobo |
| Nov 2018 | Anointed Word | Developing Your Program | Capacity building for at-risk youth programs | Connie Bobo |
| Jan 2019 | TBD | New Center Training | Orientation | Dacia Betts |
| Jan 2019 | TBD | Record Keeping Essentials | To understand the correct and compliant way to document records. | Connie Bobo |
| Apr 2019 | TBD | New Center Training | Orientation | Dacia Betts |
| Apr 2019 | Anointed Word | Program Management | Understand contract compliance and program integrity | Connie Bobo |

**5. Complete the table below or attach a copy of the training agenda planned for this year (2010/2011). Include training dates, locations, topics and the trainer.**

These lies demonstrate that Defendant Bobo made a calculated effort from the very beginning of her participation in the state's meal program to enrich herself at the expense of hungry children in our community. That is why Defendant Bobo lied about the state-mandated board members, the restrictions on her use of public meal funds, and the state-mandated trainings. Defendant Bobo these lies so that she could use the public meal funds to benefit herself without any of the state-mandated checks on her spending authority.

The evidence showed that is exactly what she did—continuing her fraud scheme for over five years, from her enrollment in the state meal program for children in 2017 to her production of false invoices and attendance sheets to the FBI in 2023. During that time, Defendant Bobo manufactured and produced dozens of fictitious food and attendance records, submitted hundreds of fraudulent meal reimbursement claims, and spent millions of dollars in public meal funds on herself. As the trial evidence revealed, Defendant Bobo's crimes were neither the product of a single, isolated mistake nor a one-time lapse in judgment. The crimes committed by Defendant

Bobo were the result of her calculated, years-long effort to enrich herself at the expense of hungry children in our community.

### (2) Defendant Bobo Purposefully Took Advantage of a Once-in-a-Generation Pandemic to Steal Millions of Taxpayer Dollars.

The trial evidence showed that Defendant Bobo intentionally exploited the state's loosened audit procedures and food service rules necessitated by the Covid-19 pandemic. The evidence at trial revealed that the number of Defendant Bobo's fraudulent meal reimbursement claims increased exponentially during the Covid-19 pandemic. As the trial testimony and evidence demonstrated, it was only after Covid-19 prevented the state from conducting regular in-person audits—and after the state allowed non-profits to run drive-thru meal services—that Defendant Bobo stole the vast majority of children's meal funds (as detailed in the chart below, included in Govt. Ex. 41).



The Guidelines partially—but not completely—account for this aggravating factor by increasing Defendant Bobo's offense level by two levels under U.S.S.G Section 2B1.1(b)(12), because her crimes involved fraud in connection with a major disaster. *See* PSR, ¶ 28. But this enhancement—which applies in every Paycheck Protection Program case—is insufficient to capture the seriousness of Defendant Bobo's pandemic fraud. Unlike the typical Paycheck Protection Program fraud, which often includes false statements on a loan application, Defendant Bobo made thousands of misrepresentations over the course of more than five years. And more than merely stealing pandemic relief money, Defendant Bobo stole public funds that were specifically designated to feed hungry children in our community.

In a similar case, a federal district court recently imposed a 336-month (28-year) sentence for a defendant who defrauded the States of Minnesota out of $47 million in children's meal funds. *See United States v. Abdiaziz Shafii Farah*, Case No. 0:22-cr-00124-NEB, Doc. 890, pp. 35, 76 (D. Minn. Sep. 15, 2025). Like Defendant Bobo here, Defendant Farah executed his fraud scheme by submitting false meal reimbursement claims for meals that were never served, and he created fake invoices and attendance sheets to cover up his crimes. In imposing a 28-year sentence for Defendant Farah, the district court correctly noted that his crime was "so much more elaborate, intricate and far-reaching than a PPP fraud case." *Id.* at 74. That same conclusion applies here.

### (3) Defendant Bobo Willfully Enriched Herself with Millions of Dollars in Public Funds that Hungry Children in Our Community Desperately Needed.

Defendant Bobo's crimes caused real, substantial, and lasting harm. By stealing nearly $20 million from Missouri's food and nutrition programs—which were designed to ensure that no Missouri child goes without food—Defendant Bobo jeopardized the future operations and funding of those programs for years to come. Defendant Bobo's notorious and extensive theft from

Missouri's food and nutrition programs will only increase the already existing cynicism about the efficacy of these public assistance programs. By further diminishing public support for these critical tools to fight childhood hunger, Defendant Bobo has done lasting and untold harm.

Defendant Bobo's crimes also caused more immediate harm. In fact, when Defendant Bobo stole the public meal funds that she promised to spend on feeding hungry children, many of the children that should have been fed by Defendant Bobo were out of school during Covid-19 and not receiving regular meals. Instead of feeding the hungry children in our community who desperately needed meals during the worst days of the pandemic, Defendant Bobo spent millions of dollars on herself.



As the trial evidence demonstrated, with just the public meal dollars that Defendant Bobo spent on properties and luxury vehicles, she could have fed every single child in the state of Missouri. *See* Govt. Ex. 45. Instead of feeding those children, Defendant Bobo chose to enrich herself.

This Court's sentence must also account for Defendant Bobo's sole motivation for committing her fraud scheme. The evidence at trial made abundantly clear that Defendant Bobo's crimes were solely motivated by greed. *See* Govt. Ex. 45. Not only did Defendant Bobo enrich herself at the expense of hungry children, the evidence at trial revealed that Defendant Bobo defrauded the State of Missouri out of $19.7 million in children's meal funds without paying a single dollar in taxes on any of that stolen money. *See* Govt. Ex. 19. As courts across the country have concluded, that makes Defendant Bobo's crimes particularly serious and warrants a significant punishment. *See United States v. Beasley*, 355 F. App'x 78, 80 (8th Cir. 2009) (affirming an upward variance for a defendant who committed fraud because the defendant's crimes "were long-standing, sophisticated, [and] . . . motivated by greed") (cleaned up); *United States v. Vorotinov*, No. 15-CR-00541, 2021 WL 5833910, at *3 (D. Minn. Dec. 9, 2021) ("As her underlying crime was primarily motivated by greed, the Court takes this conduct very seriously.").

### (4) Defendant Bobo Persistently Obstructed Justice, Including by Providing Perjured Testimony at Trial.

For years, Defendant Bobo has not only refused to accept responsibility for her crimes, she has persistently and pervasively obstructed justice. At trial, Defendant Bobo was convicted of two counts of Obstruction of Justice. Those counts were based on Defendant Bobo's knowing and intentional production of fictitious food invoices to the FBI in response to a grand jury subpoena. As the trial evidence demonstrated, Defendant Bobo produced those fictitious invoices—including

the one pictured below in Exhibit 37A—to the FBI to make it appear as though she purchased food for children when she had not actually done so.



While Defendant Bobo rightfully receives a two-level increase for producing these fictitious invoices under U.S.S.G. Section 3C1.1, *see* PSR ¶ 19, the Guidelines do not account for Defendant Bobo's substantial acts of additional obstruction. The Guidelines, for example, do not include any increased sentencing levels for the dozens of fictitious attendance logs—listing hundreds of fake children—that Defendant Bobo produced to the FBI in response to a grand jury subpoena.



In justifying the 28-year sentence for the defendant who committed a similar crime in the District of Minnesota, the district court noted that the "crime was breathtakingly elaborate. You used obviously fake names of fake children at not one site, but dozens of sites." *Farah*, Doc. 890, p. 74. Like *Farah*, Defendant Bobo's sentence must account for her persistent obstruction of justice.

But even worse than Defendant Farah, Defendant Bobo chose to continue her obstruction by perjuring herself during her testimony at trial. During her trial testimony, Defendant Bobo made a number of false statements for the purpose of trying to evade accountability for her crimes. Among other lies, Defendant Bobo's perjured testimony included the lie that she provided every meal that she told the state she had served, the lie that she paid her taxes during her scheme to defraud, and the lie that she did not knowingly produce fake invoices to the FBI. By committing

perjury during her trial testimony, Defendant Bobo committed additional criminal conduct. But because Defendant Bobo already received an Obstruction enhancement for conduct separate from her perjury and production of additional false documents, none of that additional criminal conduct is accounted for by the Guidelines. Because the Guidelines do not reflect the serious nature and circumstances of Defendant Bobo's offense—and because she must be held fully accountable for her persistent and pervasive obstruction of justice—this Court should impose an upward variance.

**B.    Defendant Bobo's History and Characteristics Further Demonstrate That a 20-Year Sentence is Warranted.**

Nothing in Defendant Bobo's background explains or excuses her crimes. And there are certainly no mitigating factors that warrant any reduction from the significant sentence that her serious crimes demand. In fact, the only purportedly mitigating factor listed in the PSR—that Defendant Bobo's crimes in this case are her "first felony" convictions, *see* PSR, ¶ 94—should not serve as the basis for a sentencing reduction. That is true for two independent reasons.

First, Defendant Bobo's lack of criminal history prior to 2017 is already accounted for by the Sentencing Guidelines and therefore should not serve as the basis for a sentencing reduction under Eighth Circuit precedent. The Eighth Circuit has repeatedly rejected sentencing reductions "predicated upon characteristics of the individual defendant for which the guidelines calculation already accounts." *United States v. McDonald*, 461 F.3d 948, 954 (8th Cir. 2006). For example, the court in *United States v. Myers*, 439 F.3d 415 (8th Cir. 2006), specifically rejected a sentencing reduction based on a lack of criminal history, which was already accounted for by the Guidelines:

> The only section 3553(a) factor identified by the district court that weighs toward a more lenient sentence is Myers' lack of criminal history. Inasmuch as a guidelines sentence reflects a defendant's criminal history, a wide divergence from the guidelines sentence based solely on this single criterion would conflict with the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Id.* at 418. *See also United States v. Claiborne,* 439 F.3d 479, 481 (8th Cir. 2006) (rejecting a variance based upon the defendant's criminal history and other factors for which the guidelines already accounted); *United States v. Morales-Uribe*, 470 F.3d 1282, 1286 (8th Cir. 2006) (reversing and remanding for resentencing where "the district court justified its downward variance by considering the same facts that it considered in finding Morales-Uribe eligible for the § 3553(f) safety-valve"); *United States v. Feemster*, 483 F.3d 583, 589 (8th Cir. 2007) ("The absence of grounds that justify further punishment is not a ground for a downward variance.").

Applied here, Eighth Circuit precedent does not support a sentencing reduction based on Defendant Bobo's lack of criminal history prior to 2017 because that fact is already fully accounted for by the Guidelines. Not only is Defendant Bobo's lack of criminal history prior to 2017 reflected in her criminal history score, but that same fact also results in a significant decrease in her Guidelines Range with a two-level reduction in her total offense level under U.S.S.G. Section 4C1.1 (the "Zero-Point Offender" reduction). *See* PSR, ¶ 33. Without that reduction, Defendant Bobo's Guidelines Range would be 210–262 months' incarceration instead of 168–210 months' incarceration. Under Eighth Circuit precedent, Defendant Bobo's lack of criminal history prior to 2017 should not serve as the basis for a sentencing reduction when it has already resulted in a substantial reduction in her Guidelines Range.

Second, even if Defendant Bobo's criminal history score did not already result in a decreased Guidelines Range, her sentence should still not be reduced based on that score because it fails to reflect her persistent criminality over the course of a decade. In fact, Defendant Bobo's criminal history score utterly fails to reflect her persistent criminality for much of the past decade. From her fraudulent enrollment in the state meal program for children in 2017, to her submission

of hundreds of fraudulent meal reimbursement claims between 2019 and 2022; to her production of dozens of fictitious records to the FBI in 2023; to her bond violations, including resisting arrest, in 2024; to her committing perjury at trial in 2025, Defendant Bobo has committed federal crime after federal crime without any increase in her criminal history score. With just her recent perjury crime alone, if Defendant Bobo were charged with and convicted of the that crime—which the evidence certainly supports—she would face a Sentencing Guidelines Range of 97–121 months' incarceration under U.S.S.G. Section 2J1.3.

In short, Defendant Bobo's criminal history score cannot form the basis of a sentencing reduction because it underrepresents her past criminality and future risk of recidivism. *See United States v. Crume*, 422 F.3d 728, 732 (8th Cir. 2005) ("Mr. Crume's repeated violations of the terms of his supervision, *see United States v. Yahnke,* 395 F.3d 823, 825–26 (8th Cir. 2005), not all of which influenced his criminal history score, and his pattern of engaging in sexual misconduct, would justify a conclusion that he would engage in sexual abuse in the future to an extent that his criminal history does not fully capture."); *United States v. Yahnke*, 395 F.3d 823, 825 (8th Cir. 2005) ("The district court also found that Yahnke's parole violations and other uncharged criminal conduct justified an increase in his criminal history."); *United States v. Kuljko*, 1 F.4th 87, 99 (1st Cir. 2021) (finding that the defendant's criminal history category "grossly underrepresented the risk of his recidivism" partly because the defendant's "frauds had lasted over a decade; that the appellant had bilked his victims out of millions of dollars but had never helped to pay for the education of his own children; [and] that he had used his daughter's name to help facilitate his obstruction of justice"); *United States v. Robinson*, 28 F. App'x 50, 55 (2d Cir. 2002) ("[The] string of frauds is enormously probative of Nissenbaum's likelihood of recidivism. The fact that the frauds continued even after Nissenbaum was arrested, even after he was indicted, and even

after he was convicted is particularly telling—it gives the court little reason to believe that he can be deterred from future crimes.").

Apart from the misleading nature of Defendant Bobo's criminal history score, what is most striking about Defendant Bobo's history and characteristics is the utter lack of mitigating circumstances. The PSR makes clear that—unlike many defendants—Defendant Bobo does not suffer from drug addiction, alcohol dependency, gambling compulsion, physical health complications, or mental health issues. *See* PSR, ¶¶ 45–60. In addition, Defendant Bobo does not have dependents who rely on her care, and she reports a pleasant childhood, a supportive family, and educational opportunities that most defendants would envy. *Id.* A full review of Defendant Bobo's history and characteristics reveals that nothing in her background—other than her well-documented avarice—explains her crimes in this case.

C.    **A 20-Year Sentence is Necessary to Promote Respect for the Rule of Law, Protect the Public, and Afford Adequate Specific Deterrence.**

Defendant Bobo's persistent and flagrant disregard for the rule of law over the past decade demonstrates the need to protect the public and afford adequate specific deterrence. Throughout her crimes and the pendency of this case, Defendant Bobo has exhibited an inability or unwillingness to conform her conduct to the law. Nine years ago, Defendant Bobo began to execute the biggest public assistance fraud in the history of the state of Missouri. When investigators started asking questions, she methodically attempted to obstruct justice. When she was placed on bond, she repeatedly violated this Court's orders—resulting in her detention. When she was put on trial, Defendant Bobo provided perjured testimony. And still today—after the full extent of her crimes have been so clearly exposed—she continues to insist that she did nothing wrong. Undeterred by state audits, the federal investigation, her indictment, this Court's bond conditions, and the

possibility of a significant sentence, Defendant Bobo has proven to this Court beyond any possible doubt that will she continue to commit crimes and harm the public. For those reasons, this Court should impose a 20-year sentence to promote respect for the law, protect the public, and afford adequate specific deterrence.

### D.    A 20-Year Sentence is Also Necessary to Afford Adequate General Deterrence.

A 20-year sentence would send a critically important message to the wider community: that public assistance fraud against the State of Missouri will not be tolerated. A lenient sentence— certainly any sentence below the Guidelines—would send the opposite message at the worst possible time. The pandemic exposed that there are already too many individuals in our community who are comfortable with taking advantage of the state's social safety net. Giving a break to the largest public assistance and pandemic fraudster in the state's history would only encourage future fraud against government programs aimed at assisting the most vulnerable individuals in our community.

Federal courts across the country have recognized that "economic and fraud-based crimes" are "more rational, cool, and calculated than sudden crimes of passion or opportunity," and thus these crimes are "prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005)). Indeed, the Eleventh Circuit in *Martin* noted that the legislative history of Section 3553 demonstrates that Congress viewed deterrence as "particularly important in the area of white-collar crime . . . even where [the defendant] might themselves be unlikely to commit another offense." *Id.* (emphasis added) (citing S. Rep. No. 98- 225, at 76, 91–92 (1983)). Indeed, "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and

15

reduced with serious punishment." *Martin*, 455 F.3d at 1240; *see also United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022) ("White collar criminals often calculate the financial gain and risk of loss of their crimes, and an overly lenient sentence sends the message that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty.") (internal citations omitted); *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (agreeing with the "widely accepted principle" that white collar crimes are "prime candidates for general deterrence"). These principles apply squarely to Defendant Bobo's crimes, which were motivated by greed.

### E.    A 20-Year Sentence—Just 6 Months Above the Guidelines Range—Also Avoids Sentencing Disparities Among Defendants Guilty of Similar Conduct.

This sentencing factor is intended to address national sentencing disparities, and it has been widely recognized that a sentence closely tethered to the Guidelines range is the best way to avoid such disparities. *See e.g.*, *United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices") (quotation omitted). Thus, by imposing a 20-year sentence, which includes a 6-month upward variance based on the aggravating circumstances presented here, this Court will avoid unwarranted sentencing disparities with similarly situated defendants nationwide.

With all of the aggravating factors in this case, there are simply no counterbalancing mitigating factors that could warrant a lesser sentence. In the most similar case to Defendant Bobo's, the defendant in *Farah* received 28 years in prison for defrauding Minnesota out of $47 million. Here, based on the lack of mitigating circumstances—and because the aggravating factors

demand a significant sentence to achieve the aims of 18 U.S.C. § 3553(a)—this Court should impose a 20-year sentence.

## CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that this Court impose a total sentence of 240 months' incarceration.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

 */s/ Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel for the defendant.

/s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO
Assistant United States Attorney