UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-CR-00578-AGF |
| | ) | |
| CONNIE BOBO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion of the United States for a Preliminary Order of Forfeiture (Doc. No. 158), following Defendant's conviction on October 23, 2025.  Defendant operated a nonprofit called New Heights Community Resource Center ("New Heights"), which was enrolled in two Department of Agriculture-funded programs that reimburse nonprofits for the distribution of meals to low-income children after school and during the summer.   Among other allegations, the indictment contended that Defendant made material misrepresentations about the number of meals provided, provided far less meals than she claimed to have provided and diverted millions of dollars to her personal use.  After a trial, the jury found Defendant guilty of three counts of wire fraud, one count of aggravated identity theft, and two counts of obstruction of an official proceeding.

In connection with the three wire fraud counts, the Government seeks the forfeiture of six parcels of real property and one Mercedes-Benz vehicle, together valued in excess of $4.3 million, which the Government asserts were purchased by the Defendant with the proceeds of the fraud.  In addition, the Government seeks a forfeiture money judgment in the amount of $19,748,071.30, which is the full amount of the state meal reimbursement money received by Defendant.  At the

time of trial, the parties agreed to submit all issues with respect to forfeiture to the Court, and Defendant waived any right to a jury determination with respect to the forfeitability of certain assets.

### Proceedings Related to Forfeiture

The Government initially filed its Memorandum on Forfeiture ("Government's Memorandum") on December 19, 2025.  (Doc. No. 148).  At that time, it was unclear how Defendant wished to proceed on the issue of forfeiture.  Following a status conference on December 29, 2025, Defendant was directed to submit in writing her position with respect to the forfeiture proceedings.  On January 2, 2026, after conferring with counsel, Defendant filed a notice stating that she wished to contest the forfeiture; that she wished to proceed based solely on the evidence presented at trial and had no further evidence for the Court's consideration; that she did not wish to have an evidentiary hearing; and that she did not intend to file any responsive memoranda to the Government's Memorandum.  (Doc. No. 154).  On February 11, 2026, the Government filed the instant Motion for a preliminary order of forfeiture.

Upon review of the record, the Court requested supplemental briefing with respect to two issues.  First, with respect to the request for a forfeiture money judgment, the Court requested supplemental briefing as to the proper amount of any forfeiture money judgment, and whether "proceeds" should be determined under 18 U.S.C. § 981(a)(2)(A) or § 981(a)(2)(B).  Second, the Court requested further information with respect to the basis for any determination under 28 U.S.C. § 853(p)(1), including reference to any trial evidence; the basis for the Government's assertion that it "has not identified other property warranting forfeiture as a substitute asset pursuant to [21 U.S.C. § 853(p)]" (Doc. No.  158, at 4); and what, if any, evidence exists in the trial record with respect to Defendant's current assets.  To the extent no evidence was offered at trial with respect to Defendant's current assets, the Court requested the parties to advise whether they had any objection

to the Court relying on the financial information contained in the Disclosure Copy of the Presentence Report ("Preliminary PSR") filed on January 27, 2026 (Doc. No. 155), as to which neither party had filed any objection, in connection with any determinations related to the request for a forfeiture money judgment.

The Government filed a Supplemental Memorandum on February 27, 2026.  (Doc. No. 162).  The Government contends that a forfeiture money judgment in the full amount of the gross proceeds of $19,748,071.30 is proper, using the definition of "proceeds" found in 18 U.S.C. § 981(a)(2)(A).  And even if "proceeds" are measured under 18 U.S.C. § 981(1)(2)(B), Defendant did not meet her burden to establish any "direct costs" in providing the goods or services.  The Government further summarized trial testimony showing that the bulk of the funds received by Defendant had been spent or dissipated and stated that it had no objection to the Court relying on the financial information contained in the Preliminary PSR.  Defendant filed a one-page response, maintaining her innocence and stating that she "concurs with the Government's assessment regarding the forfeiture," such that she acknowledges the forfeiture assessment should her conviction stand.  (Doc. No. 182).  Defendant did not state any objection to the Court relying on the financial information contained in the Preliminary PSR.

The Court agrees the government has met its burden to establish that it is entitled to a specific order of forfeiture with respect to the six parcels of real property and the vehicle listed in the Motion for Preliminary Order of Forfeiture.  Notwithstanding the parties' positions with respect to the amount of the forfeiture money judgment, the Court believes that an assessment of "net proceeds" is appropriate here and based on the testimony and evidence at trial, will enter a forfeiture money judgment in the amount of $12,922,648.25.

## DISCUSSION

Defendant was convicted of three counts of wire fraud, in violation of 18 U.S.C. § 1343.

Criminal forfeiture is authorized under 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C)[1] and is a

mandatory part of the sentencing under 28 U.S.C. § 2461(c).  Section 2461(c) authorizes criminal

forfeiture for any offense for which Congress has authorized civil forfeiture.  Pursuant to Rule

32.2(b)(1)(A):

> If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Fed. R. Crim P. 32.2(b)(1)(A).

In this case the Government seeks an order of forfeiture with respect to the following

specific property (the "Subject Property"):

    i.       A property located at 288 Strayhorn Drive, St. Peters, MO 63376
    ii.      A property located at 418 Villa Blanc Court, O'Fallon, MO 63366
    iii.    A property located at 2 Depaula Trails, St. Charles, MO  63301
    iv.    A property located at 1876 Spring Mill Creek, St. Charles, MO  63303
    v.       A property located at 12575 Natural Bridge Road, Bridgeton, MO  63044
    vi.    A property located at 12567 Natural Bridge Road, Bridgeton, MO 63044
    vii.   A 2017 Mercedes-Benz  G550 Wagon 4x4 Squared, VIN WDCYC5FF3HX269710.

At the trial, the Government proved that the Subject Property was directly traceable to the proceeds

of the wire fraud.  Indeed, Defendant admitted the New Heights reimbursement funds were used for

the purchases.  While Defendant challenges her conviction, she does not otherwise contest the

propriety of an order of forfeiture with respect to the Subject Property, nor does she contest entry of

---

[1] 18 U.S.C. § 981(a)(1)(C) authorizes the forfeiture of any property derived from the proceeds traceable to a violation of "any offense constituting 'specified unlawful activity'" as defined in 18 U.S.C. § 1956(c)(7).  "Specified Unlawful Activity" under § 1956(c)(7)(A) includes any act constituting an offense listed in 18 U.S.C. § 1961(1) (racketeering activity).  Section 1961(1)(B) in turn includes any act indictable under 18 U.S.C. § 1343 (wire fraud).  *See United States v. Tartaglione*, Crim. Action No. 15-491, 2018 WL 1740532, at *20 (E.D. Pa. Apr. 11, 2018); *United States v. Sigillito*, 899 F. Supp. 2d 850, 855 (E.D. Mo. 2012).  *See also United States v. Slesinger*, 396 F. Supp. 2d 267, 275 (E.D.N.Y. 2005) (also discussing contrary cases).

a forfeiture money judgment, apart from her claim of innocence.  As such, the Court will order that Defendant's interest in the Subject Property be forfeited.

The government also seeks a forfeiture money judgment in the amount of the gross proceeds received by Defendant from the meal-reimbursement operations of New Heights, $19,748,071.30, pursuant to 18 U.S.C. § 981(a)(2)(A).

Title 18 U.S.C. § 981(a)(2) provides two distinct measures of "proceeds" for purposes of § 981(a)(1):

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as a result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.  The claimant shall have the burden of proof with respect to the issue of direct costs.  The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2)(A) and (B).  While the distinction between the two scenarios is not always clear, the caselaw makes clear that §981(a)(2)(A) was meant to cover inherently unlawful activities, such as robbery.  *United States v. Bodouva*, 853 F.3d 76, 79-80 (2d. Cir. 2017) (defining "unlawful activities" as "inherently unlawful activities" and "acts that cannot be done lawfully"); *United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (defining inherently unlawful activities as including such activities as the sale of food stamps or a robbery).

The government contends that § 981(a)(1)(A) applies here because obtaining money through material misrepresentations is an "inherently unlawful activity."  Doc. No. 160, at 3. The Court does not agree.  Just as there is nothing inherently unlawful about the sale of

securities, though the purchase or sale itself may be made in an illegal manner, there is nothing inherently illegal about operating a non-profit agency that provides meals to children and obtains reimbursement from federal sources, though the reimbursement requests may be made in an illegal manner.  *See United States v. Nacchio*, 573 F.3d 1062, 1088-90 (10th Cir. 1009); *United States v. Watson*, No. 23-CR-00082 (EK), 2025 WL 510814, at *18 (E.D.N.Y. Feb. 16, 2025).

What Defendant did here was operate the agency in an unlawful manner, at least beginning in approximately June 2020.[2]  The evidence at trial established that throughout the relevant time period, Defendant did in fact operate sites for the distribution of meals and continued to provide meals to children.  But at least beginning in June 2020, Defendant misrepresented the number of meals provided and submitted false documentation to substantiate the inflated claims for reimbursement.

The cases cited by the government do not suggest otherwise.  For example, *United States v. Simmons*, 154 F.3d 765, 770-771 (8th Cir. 1998) is distinguishable.  It involved charges under the RICO statute, which has its own forfeiture provision, and the Court relied on the legislative history of the RICO statute and Congress' directive that the statute be liberally construed.  *See Prost v. Anderson*, 636 F.3d 578, 602-03 (10th Cir. 2011) (discussing *Simmons*). In *United States v. Nock*, 148 F.4th 607, 612 (8th Cir. 2025), unlike here, the whole investment company was a sham.  Likewise, *United States v. Sigillito*, 899 F. Supp. 2d 850 (E.D. Mo. 2012) involved a Ponzi scheme, where the "defendant offered no lawful good or lawful services as part of the BLP."  *Id.* at 865.  *United States v. Uddin*, 551

---

[2] The Court assumes that some portion of the more than $19,000,000 the government seeks was obtained by New Heights between March 2019 and May 2020, but little if any evidence was submitted to demonstrate inflated reimbursement requests during that time period, and the government's charts suggest otherwise. *See* Doc. No. 148-1 and 148-3.

F.3d. 176, 181 (2d Cir. 2009) involved the sale of food stamps, which is not permitted under any circumstances. *United States v. Schlesinger*, 396 F. Supp. 2d 267, 273, 279 (E.D. N.Y. 2005) also involved charges of money laundering, and the court recognized that "the money laundering statute expressly covers proceeds that are 'traceable' to the property 'involved in' the offense," and that the full amount of fraudulent insurance deposits were subject to forfeiture as they were all "involved" in a money laundering violation. *See* 18 U.S.C. § 981(a)(1)(A) ("Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property" is subject to forfeiture). Further, the defendant in that case failed to establish that the amounts the defendant sought to exclude were not obtained directly or indirectly from the commission of the offense giving rise to the forfeiture. *Id.* at 278.

Thus, the Court finds that this case is more akin to the securities fraud cases cited above and the procurement fraud or government contracting cases cited by the government. *See, e.g., United States v. St. Pierre*, 809 F. Supp. 2d 538, 543 (E.D. La. 2011). Just as the defendants in the procurement fraud cases induced the government, through misrepresentations or kickbacks, to award contracts, Defendant here induced the government to approve New Heights based on misrepresentations related to the composition and responsibilities of the board, and obtained grossly inflated reimbursements based on misrepresentations as to the number of meals provided. To use the language of the government, this involved "nominally lawful activities conducted in an unlawful manner." Doc. No. 160, at 4.

The government further asserts that even if the net proceeds definition of § 981(a)(2)(B) applies, the forfeiture money judgment should still include the full amount of the funds received because Defendant has failed to offer proof with respect to the issue of

her direct costs.  The statute expressly provides that "[t]he claimant shall have the burden of proof with respect to the issue of direct costs."  18 U.S.C. § 981(a)(2)(B).  And Defendant has, somewhat inexplicably, elected not to contest the forfeiture.  Nevertheless, the parties agreed to have all aspects of the forfeiture determined by the Court.  And the Court may make this determination based on the evidence in the record or additional evidence submitted by the parties.  *United States v. Prather*, 456 Fed. Appx. 622, 625 (8th Cir. 2012); Fed. R. Crim P. 32.2(b)(1)(A).  Here, the Court simply cannot ignore the evidence presented at trial.  The government presented uncontroverted evidence that New Heights did provide meals to children during the relevant time period and spent $6,825,423.14 on food and milk purchases in connection with those meals.  *See* Doc. No. 148-1.  As such, the Court finds that these are "costs incurred in providing the goods or services," and the gross reimbursement amounts received should be reduced by the amount spent on food and milk purchases.

Title 21 U.S.C. § 853 "permits imposition of a money judgment on a defendant who has no assets at the time of sentencing."  *United States v. Smith*, 656 F.3d 821, 827 (8th Cir. 2011).  Under Section 853(p), the imposition of a money judgment as substitute property may be had where the property subject to criminal forfeiture cannot be located upon the exercise of due diligence or has been transferred or sold to, or deposited with, a third party.  At trial the government established from a review of Defendant's bank records that Defendant spent approximately $4.5 million in proceeds to purchase the Subject Property.  The balance that was not spent on food and milk purchases was spent by Defendant on other things, such as payments to friends and family and renovations to the properties purchased by the proceeds.  While the parties acknowledge that the trial record does not contain other evidence of Defendant's current assets, the parties have agreed that the Court can rely on the

information contained in the Preliminary PSR.  That report shows no assets other than the

Subject Property that this Court finds is subject to a specific order of forfeiture.  The

government has therefore met its burden to establish that it is entitled to a forfeiture money

judgment.  This amount may perhaps be reduced to the extent the government is able to

recover the Subject Property and receive funds from the sale of those properties.

## CONCLUSION

The government has met its burden to establish that it is entitled to forfeiture of the

Subject Property listed in its Motion for Preliminary Order of Forfeiture.  (Doc. No. 158).

The government is also entitled to a forfeiture money judgment in the amount of

$12,922,648.25.  A Preliminary Order of Forfeiture consistent with this Memorandum and

Order will be entered by separate order.


Dated this 13th day of March, 2026.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE